UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LHAKPA TSAMCHO, on behalf of herself and all
other similarly situated individuals,

                Plaintiff,

        -against-

JANET NAPOLITANO, in her official capacity as
Secretary of the Department of Homeland Security;
ALEJANDRO MAYORKAS, in his official
capacity as Director of the United States Citizenship
and Immigration Services; DONALD NEUFELD,
in his official capacity as Associate Director of the
Service Center Operations Directorate of the United
States Citizenship and Immigration Services;
DAVID L. ROARK, in his official capacity as
Director of the Texas Service Center of the United
States Citizenship and Immigration Services; and
GERARD HEINAUER, in his official capacity as
Director of the Nebraska Service Center of the
United States Citizenship and Immigration Services,

                Defendants.
-------------------------------------------------------------------X

★ MAY 0 5 2010 ★

10 CV ——————— BROOKLYN OFFICE

(ECF CASE)

**COMPLAINT**

**10    2029**

**GARAUFIS, J.**

**PRELIMINARY STATEMENT**

1.      Plaintiff Lhakpa Tsamcho, on behalf of herself and all other similarly situated

individuals, brings this class action challenging the United States Citizenship and Immigration

Services' ("USCIS") reopening and denial of approved Refugee/Asylee Relative Petitions

("I-730 petitions") solely because the beneficiary of the approved I-730 petition did not appear

for overseas processing at a U.S. consulate or appeared without requested documents.

2.      Tsamcho is an ethnic Tibetan who was granted asylum in the United States after

she fled persecution against Tibetans in the People's Republic of China. After obtaining asylum

status for herself, she submitted I-730 petitions to USCIS in order to obtain "derivative asylum"

status for her husband and three children. USCIS approved Tsamcho's I-730 petitions and appointments were scheduled for her family members to appear at a U.S. consulate for overseas processing. However, Tsamcho's family members did not appear for their appointments: Tsamcho's husband, youngest daughter, and son were unable to escape Tibet due to severe travel restrictions imposed upon Tibetans by the Chinese government following the Tibetan uprising in March of 2008, and Tsamcho's eldest daughter had already escaped Tibet but incorrectly believed that she would not be seen at the consulate unless her father and siblings were also present. Rather than simply holding the approved I-730 petitions until Tsamcho's family members are able to appear for overseas processing, as was USCIS's policy until recently, USCIS reopened and denied each of Tsamcho's approved I-730 petitions. Thus, in a perverse twist, the Chinese government's mistreatment of Tibetans earlier served as the basis for USCIS's grant of asylum status to Tsamcho, but is now leading to USCIS's denial of derivative asylum status to Tsamcho's husband and children.

3.      Tsamcho seeks individual and class-wide relief pursuant to the Administrative Procedure Act on the following grounds: First, USCIS's reopening and denial of Tsamcho's and class members' approved I-730 petitions is "not in accordance with law," in violation of 5 U.S.C. § 706(2)(A), because such actions violate USCIS's own regulation establishing the circumstances under which an approved I-730 petition becomes invalid, 8 C.F.R. § 208.21(d); second, USCIS's reopening and denial of Tsamcho's and class members' approved I-730 petitions is "arbitrary [or] capricious," in violation of 5 U.S.C. § 706(2)(A), because the fact that an I-730 beneficiary does not appear for consular processing or appears without the requested documents is not relevant to whether the beneficiary is eligible for derivative asylum status, and because the purpose of consular processing is primarily to determine whether the person who

appears claiming to be the beneficiary of an approved I-730 should be admitted to the United States, not to re-adjudicate the already-approved I-730 petition; and, third, USCIS's failure to engage in notice-and-comment rulemaking prior to implementing its new policy or rule requiring the reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents, violates 5 U.S.C. § 553(b).

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers jurisdiction over an action that arises under a right of action created by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

5.      Venue properly lies in the Eastern District of New York under 28 U.S.C. § 1391(e)(3) because the named Plaintiff resides in this judicial district and no real property is involved in the action.

## PARTIES

### Plaintiff

6.      Plaintiff Lhakpa Tsamcho is an ethnic Tibetan and a citizen of the People's Republic of China. She was born in 1970, in Lhasa, Tibet, and she currently resides in Corona, New York. Tsamcho filed I-730 petitions for her husband and three children on or about May 29, 2007, which USCIS approved on May 21, 2008. In four identical decisions dated October 30, 2009, USCIS reopened and denied Tsamcho's I-730 petitions solely because her husband and children did not appear for overseas processing at a U.S. consulate.

3

**Defendants**

7.     Defendant Janet Napolitano is the Secretary of the United States Department of Homeland Security ("DHS"). As such, she is responsible for, *inter alia*, administering USCIS and ensuring the implementation and enforcement of the Immigration and Nationality Act.

8.     Defendant Alejandro Mayorkas is the Director of the United States Citizen and Immigration Services ("USCIS"). As such, he is responsible for, *inter alia*, the administration of immigration benefits and services in the United States.

9.     Defendant Donald Neufeld is the Associate Director of the Service Center Operations Directorate of the United States Citizenship and Immigration Services. As such, he is responsible for, *inter alia*, overseeing all activities at USCIS's four service centers, including the Texas Service Center and the Nebraska Service Center.

10.     Defendant David L. Roark is the Director of the Texas Service Center of the United States Citizenship and Immigration Services. As such, he is responsible for, *inter alia*, the adjudication of petitions and applications for immigrant benefits, including Refugee/Asylee Relative Petitions ("I-730 petitions") submitted by aslyees residing in Alabama, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, South Carolina, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, Tennessee, Texas, Vermont, Virginia, U.S. Virgin Islands, or West Virginia. *See* Instructions for I-730 Refugee/Asylee Relative Petition, *available at* http://www.uscis.gov/files/form/i-730instr.pdf.

11.     Defendant Gerard Heinauer is the Director of the Nebraska Service Center of the United States Citizenship and Immigration Services. As such, he is responsible for, *inter alia*, the adjudication of petitions and applications for immigrant benefits, including I-730 petitions

submitted by asylees residing in Alaska, Arizona, California, Colorado, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, Ohio, Oregon, South Dakota, Utah, Washington, Wisconsin, or Wyoming. *See* Instructions for I-730 Refugee/Asylee Relative Petition, *available at* http://www.uscis.gov/ files/form/i-730instr.pdf.

## STATUTORY AND REGULATORY FRAMEWORK

12.    Asylum may be granted to an alien who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

13.    In general, a "spouse," as defined in 8 U.S.C. § 1101(a)(35), or a "child," as defined in 8 U.S.C. § 1101(b)(1), of an alien who is granted asylum may, if not otherwise eligible for asylum, be granted the same status as the alien if accompanying, or following to join, such alien. 8 U.S.C. § 1158(b)(3)(A); *see also* 8 U.S.C. § 1158(b)(3)(B) (establishing continuing classification of certain aliens as children); 8 C.F.R. § 208.21(a) (establishing eligibility criteria); 8 C.F.R. § 208.21(b) (establishing rules concerning existence of spouse and child relationship). This status is referred to as "derivative asylum" status.

14.    When a spouse or child of an alien granted asylum resides outside the United States, the asylee may request derivative asylum status for his or her spouse or child(ren) by filing a separate Refugee/Asylee Relative Petition ("Form I-730" or "I-730 petition") for each qualifying family member. 8 C.F.R. § 208.21(d); *cf.* 8 C.F.R. § 208.21(e) (establishing rules for requesting derivative asylum status for spouses and children residing inside the United States).

15.	Depending on the asylee's state of residence, the asylee must file his or her I-730 petitions with either USCIS's Texas Service Center or Nebraska Service Center. *See* Instructions for I-730 Refugee/Asylee Relative Petition, *available at* http://www.uscis.gov/files/form/i-730instr.pdf.

16.	Each I-730 petition must set forth the full name, relationship, date and place of birth, and current location of the qualifying family member, and it must be accompanied by a recent photograph that clearly identifies the family member and that will be made part of his or her immigration record for identification purposes. 8 C.F.R. § 208.21(d).

17.	An asylee who files an I-730 petition must establish by a preponderance of the evidence that the person on whose behalf he or she files the I-730 petition is an eligible spouse or child. 8 C.F.R. § 208.21(f).

18.	An asylee must file an I-730 petition within two years of the date on which the asylee was granted asylum status (or before February 28, 2000, whichever is later), unless USCIS determines that the filing period should be extended for "humanitarian reasons." 8 C.F.R. § 208.21(d).

19.	When USCIS approves an I-730 petition, it notifies the asylee of such approval on a Form I-797, Notice of Action. 8 C.F.R. § 208.21(d). USCIS then forwards the approved I-730 petition to the U.S. Department of State for delivery to the U.S. embassy or consulate having jurisdiction over the area in which the asylee's spouse or child is located. *Id.* The Department of State then schedules appointments for the beneficiaries of approved I-730 petitions to be processed at the embassy or consulate.

20.	"The purpose of the consular interview with [I-730] beneficiaries is to verify the applicant's identity, confirm the relationship between the petitioner and beneficiary, and

6

determine whether any INA 212(a) [8 U.S.C. § 1182(a)] inadmissibilities or other bars to admission exist." U.S. Dep't of State, 9 *Foreign Affairs Manual* App'x O, § 1208.1 (Mar. 19, 2009), *available at* http://www.state.gov/documents/organization/88059.pdf.

21.     "The approval of the [I-730 petition] shall remain valid for the duration of the relationship to the asylee and, in the case of a child, while the child is under 21 years of age and unmarried, provided also that the principal's status has not been revoked." 8 C.F.R. § 208.21(d).

22.     A spouse or child who obtains derivative asylum status pursuant to an I-730 petition "shall be granted asylum for an indefinite period unless the principal's status is revoked." 8 C.F.R. § 208.21(g).

23.     If an asylee's spouse or child is found to be ineligible for derivative asylum status, "a written notice stating the basis for denial shall be forwarded to the principal alien." 8 C.F.R. § 208.21(e). "No appeal shall lie from this decision." *Id.*

24.     The Administrative Procedure Act ("APA") provides that any individual "adversely affected or aggrieved by agency action . . . is entitled to judicial review." 5 U.S.C. § 702. A reviewing court must "hold unlawful and set aside" agency action found to be, *inter alia*, "not in accordance with law" or "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

25.     The APA further requires federal administrative agencies to provide a notice-and-comment period prior to implementing a substantive rule or policy, including a rule or policy that conflicts with existing regulations or is a departure from prior policy and practice. 5 U.S.C. § 553(b).

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules

of Civil Procedure, on behalf of herself and a proposed class of:

> All individuals who have submitted or will submit a Refugee/Asylee Relative
> Petition ("I-730 petition") to the United States Citizenship and Immigration
> Services ("USCIS"), and whose I-730 petition has been or will be approved by
> USCIS but subsequently reopened and denied by USCIS because the beneficiary
> of the I-730 petition did not appear for processing at a United States consulate or
> appeared without the requested documents.

27.     The proposed class is so numerous that joinder of all members is impracticable.

Upon information and belief, there are currently many dozens, if not hundreds, of individuals

who are similarly situated to the Plaintiff.

28.     There are questions of fact and law common to members of the proposed class

that predominate over any questions affecting only the named Plaintiff, including whether

USCIS's reopening and denial of approved I-730 petitions because the beneficiary did not appear

for processing at a U.S. consulate or appeared without the requested documents violates Sections

706(2)(A) and 553(b) of the Administrative Procedure Act.

29.     The claims of the named Plaintiff are typical of the claims of the members of the

proposed class.  The named Plaintiff, like all class members, is an individual who has submitted

one or more I-730 petitions, whose I-730 petitions have been approved by USCIS, and whose

I-730 petitions have been subsequently reopened and denied by USCIS because the beneficiary

of the I-730 petition did not appear for processing at a U.S. consulate or appeared without the

requested documents.  Like all members of the proposed class, the named Plaintiff brings claims

under the Administrative Procedure Act against all Defendants.

30.     The named Plaintiff will adequately and fairly protect the interests of all members of the proposed class because she has the requisite personal interest in the outcome of this litigation and she has no interest antagonistic to any members of the proposed class.

31.     Plaintiff is represented by the New York Legal Assistance Group, whose attorneys are experienced in class-action litigation, including litigation to enforce the rights of immigrants.

32.     Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

33.     USCIS is implementing a policy or rule requiring the reopening and denial of approved I-730 petitions solely because the beneficiary did not appear for overseas processing at a U.S. consulate or appeared without the requested documents (hereinafter "derivative asylum policy").

34.     USCIS reopens and denies approved I-730 petitions pursuant to the derivative asylum policy regardless of the reason why the beneficiary did not appear for overseas processing at a U.S. consulate or appeared without the requested documents.

35.     There are many reasons why beneficiaries of approved I-730 petitions may not appear for overseas processing at a U.S. consulate or may appear without the requested documents.

36.     Hostile conditions in the country in which the beneficiaries reside may make traveling to a U.S. consulate dangerous or impossible. These country conditions are typically the same conditions that formed the basis of the I-730 petitioner's asylum claim.

37.     Hostile conditions in the country in which the beneficiaries reside may prevent beneficiaries from obtaining the official documents requested by U.S. consular officials; for example, government officials hostile to particular racial, ethnic, religious, or political groups may refuse to issue passports, birth certificates, marriage certificates, and other official documents to members of those disfavored groups. These country conditions are typically the same conditions that formed the basis of the I-730 petitioner's asylum claim.

38.     Beneficiaries who do not have the money necessary to pay for a passport or to purchase an airplane ticket may not appear for processing because they are unable to travel to the United States at the time of the scheduled appointment.

39.     Beneficiaries who are very young children may not appear for processing because they are not ready or able to travel alone to the United States.

40.     Even when beneficiaries of approved I-730 petitions do not appear for overseas processing at a U.S. consulate or appear with the requested documents, the beneficiaries are likely, if not certain, to be able to appear at a U.S. consulate with the requested documents on some future date.

41.     When USCIS reopens and denies approved I-730 petitions pursuant to its derivative asylum policy, USCIS does not dispute the legitimacy of the asylee's relationship to his or her spouse and children. Indeed, USCIS does not set forth any reason for reopening and denying the I-730 petitions other than its assertion that the beneficiaries did not appear for overseas processing at a U.S. consulate or appeared without the requested documents.

42.     When USCIS reopens and denies approved I-730 petitions pursuant to its derivative asylum policy, USCIS does not do so in the exercise of its discretion. Instead, it determines that the approved I-730 petitions must be reopened and denied solely because the

beneficiaries did not appear for overseas processing at a U.S. consulate or appeared without the requested documents. According to USCIS, these facts constitute so-called "adverse information" that requires denial of the I-730 petitions. Nowhere does USCIS indicate that it is denying the I-730 petitions as a matter of discretion.

43. Once USCIS reopens and denies an approved I-730 petition, the asylee who filed the I-730 petition has no administrative appeal rights through which she can challenge the reopening and denial of the I-730 petition.

44. USCIS's derivative asylum policy is in conflict with 8 C.F.R. § 208.21(d), which establishes the circumstances under which an approved I-730 petition becomes invalid.

45. USCIS's derivative asylum policy is based on an interpretation of 8 C.F.R. § 208.21 that contradicts USCIS's earlier interpretation of that regulation.

46. USCIS's derivative asylum policy imposes new requirements, duties, and obligations upon I-730 petitioners and beneficiaries. These new requirements, duties, and obligations are not supported by and instead conflict with the statutory and regulatory provisions governing USCIS's processing and adjudication of I-730 petitions.

47. USCIS's derivative asylum policy is a substantive departure from prior USCIS policy.

48. Asylees have suffered and will suffer irreparable harm as a result of USCIS's derivative asylum policy. This harm includes the effective deprivation of their ability to reunite their families in the United States by obtaining derivative asylee status for their spouses and children.

49. Most, if not all, asylees whose I-730 petitions are denied pursuant to USCIS's derivative asylum policy will be unable to submit new I-730 petitions within the two-year filing

period because of the length of time that passes between when an asylee files an I-730 petition and when USCIS reopens and denies an approved I-730 petition. Indeed, as recently as June of 2008, it took USCIS an average of 18 months to adjudicate I-730 petitions and forward approved petitions to the State Department for overseas processing.

50.     USCIS may extend the two-year filing period for I-730 petitions for "humanitarian reasons." USCIS determines whether to extend the filing deadline based on the asylee's explanation of why he or she "could not file within 2 years of being granted [asylum] status." *See* Instructions for I-730 Refugee/Asylee Relative Petition, *available at* http://www.uscis.gov/files/form/i-730instr.pdf. It is therefore extremely unlikely that USCIS will extend the filing deadline for asylees whose approved I-730 petitions were reopened and denied pursuant to USCIS's derivative asylum policy. Accordingly, USCIS's reopening and denial of approved I-730 petitions pursuant to the derivative asylum policy will result in many asylees forever losing their opportunity to obtain derivate asylum status for their spouses and children living abroad.

51.     Even if an asylee whose I-730 petition is reopened and denied pursuant to the derivative asylum policy is able to obtain an extension of the two-year filing period for "humanitarian reasons," the asylee will be required to wait many months longer to reunite his or her family in the United States than if the initial I-730 petition had not been reopened and denied.

52.     Even if the unlikely situation arises in which USCIS reopens and denies an approved I-730 petition pursuant to the derivative asylum policy before the two-year filing period has expired, the asylee will be required to wait many months longer to reunite his or her family in the United States than if the initial I-730 petition had not been reopened and denied.

53. Many asylees cannot afford to hire an attorney and are unable to obtain free legal representation, making it very difficult for asylees to challenge USCIS's reopening and denial of their approved I-730 petitions pursuant to the derivative asylum policy.

54. Prior to implementing the derivative asylum policy, USCIS did not provide notice to the public of the policy or give the public an opportunity to comment on the policy, as required by the Administrative Procedure Act, 5 U.S.C. § 553(b).

55. Prior to implementing the derivative asylum policy, USCIS (and its predecessor agency, the Immigration and Naturalization Service) did not reopen and deny approved I-730 petitions solely because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents. Instead, USCIS "administratively closed" approved I-730 petitions in such situations. If the beneficiary subsequently became able to appear for processing with the requested documents, the petitioner could notify USCIS of this fact and, as long as the beneficiary remained eligible for derivative asylee status under 8 C.F.R. § 208.21(d), USCIS would resend or "reaffirm" the approved petition to the U.S. consulate for overseas processing.

56. As recently as June 25, 2008, USCIS indicated that approved I-730 petitions do not expire or become invalid when the beneficiary does not appear for overseas processing. When asked how to "revive" an I-730 petition that was approved but not used for seven years because the beneficiaries were young children whose overseas guardian refused to allow them to travel alone to the United States, USCIS responded that if the I-730 petition was "administratively closed for failure to prosecute the case to completion" the petitioner should request "to reaffirm the case to the consulate now that the derivatives are able to travel to the United States. The files will be requested and reaffirmed back to the consulate." *See* Question

& Answer, USCIS National Stakeholder Meeting 5-6 (Apr. 29, 2008, rev. Jun. 25, 2008), *available at* http://www.uscis.gov/ files/nativedocuments/revised_qa_062508.pdf. USCIS provided similar guidance on January 26, 2006. *See* Question & Answer, USCIS NSC Refugee/Asylee Teleconference 8 (Jan. 26, 2006) ("If the initial [I-730] petition was sent back by post because the beneficiary failed to show up for an interview, the NSC will reaffirm its decision and send the case back to post for continued processing.").

57.    Thus, prior to implementation of the derivative asylum policy, USCIS would not have reopened and denied the approved I-730 petitions that have been and will be reopened and denied pursuant to the current policy. Rather, USCIS would have "administratively closed" the I-730 petitions and once USCIS was notified that the beneficiary was able to appear at the U.S. consulate it would have "reaffirmed" the I-730 petition back to the consulate for overseas processing.

## FACTS OF THE NAMED PLAINTIFF

58.    Plaintiff Lhakpa Tsamcho, an ethnic Tibetan and a citizen of the People's Republic of China, entered the United States on January 5, 2003, and filed an application for asylum on or about December 22, 2003. Tsamcho sought asylum based on persecution by the Chinese government on account of her Tibetan ethnicity. Tsamcho was granted asylum on December 13, 2005.

59.    On or about May 24, 2007, Tsamcho filed separate Refugee/Asylee Relative Petitions ("I-730 petitions") for her husband, Nyima Gyaltsen; her eldest daughter, Tenzin Dickey; her youngest daughter, Tenzin Tapsang; and her son, Tenzin Norjin.

14

60.     At the time Tsamcho filed her I-730 petitions, her husband, youngest daughter, and son were living in Tibet, while her eldest daughter had already fled Tibet and was living in India.

61.     Tsamcho filed her I-730 petitions so that she could be reunited with her family in the United States, where they would be safe from persecution against Tibetans. She was unable to file her I-730 petitions sooner because it took her many months to obtain her official marriage certificate and her husband's and children's official birth certificates.

62.     Tsamcho requested on her I-730 petitions that her family members' overseas processing appointments be scheduled in India because she believed that it would be safer and easier for them to travel to the U.S. consulate in New Delhi, India than to a consulate in China.

63.     While Tsamcho was waiting for USCIS to adjudicate her I-730 petitions, Tsamcho's husband, youngest daughter, and son applied for Chinese passports. Because of their Tibetan ethnicity, they were forced to pay an exorbitant fee to a middle-man to ensure that their applications would be processed.

64.     Beginning on March 10, 2008, several Tibetan Buddhist monks and nuns engaged in non-violent protests to commemorate the anniversary of the 1959 Tibetan uprising. These peaceful protests sparked widespread unrest in Tibet, and many Tibetans living in Tibet and the surrounding areas joined the protests in the following days. Chinese security officials used force to arrest and imprison many Tibetan protestors, and rioting occurred on March 14 and 15, 2008.

65.     In the wake of the Tibetan unrest of March 2008, Tsamcho's husband, youngest daughter, and son were informed by the middle-man that the Chinese government was no longer processing passport applications for Tibetans.

66. On March 21, 2008, USCIS informed Tsamcho that her I-730 petitions were approved. Thereafter, USCIS forwarded the approved I-730 petitions to the U.S. Department of State's National Visa Center for Tsamcho's family members' "overseas processing."

67. The U.S. Department of State scheduled processing appointments for Tsamcho's husband and children at the U.S. consulate in New Delhi, India, as requested by Tsamcho on her I-730 petitions.

68. Tsamcho's husband, youngest daughter, and son did not appear at this appointment, scheduled for June 4, 2008, because the Chinese government's severe travel restrictions on Tibetans prevented them from leaving Tibet. Although Tsamcho's eldest daughter was living in India at the time, she also did not appear at the consulate because someone had told her that if she did not go to the interview with her entire family, she would not be permitted to come to the United States.

69. Tsamcho was later notified that her husband and children should appear for processing at the U.S. consulate in India on September 10, 2008. Tsamcho's family members did not appear on that date for the same reasons they did not appear for the previous appointment.

70. On or about July 21, 2009, USCIS mailed Tsamcho a "Notice of Intent to Deny" for each of her approved I-730 petitions, indicating that, because Tsamcho's husband and children did not appear for their appointments at the U.S. consulate, USCIS intended to reopen her I-730 petitions and deny them. *See* Notice of Intent to Deny Form I-730 (July 21, 2009).

71. On or about August 20, 2009, Tsamcho's attorney submitted to USCIS a Request for Reconsideration of Intent to Deny on Humanitarian Grounds, arguing that Tsamcho's I-730 petitions should be extended until her husband and children are able to leave Tibet and appear at

a U.S. consulate. The Request for Reconsideration referenced and included copies of the following documents: an affidavit from Tsamcho; the U.S. Department of State 2008 Human Rights Report: China; and an INS memorandum authored by former Deputy Commissioner William Yates, *Procedural Guidance on Admission and Adjustment of Status for Refugees* (May 15, 2000).

72.    On October 30, 2009, USCIS issued four identical Decisions denying Tsamcho's I-730 petitions. *See* Decisions on Form I-730 (Oct. 30, 2009), attached as Exhibit A. According to the Decisions, Tsamcho's family members' inability to appear for consular processing constituted "adverse information" that required USCIS to deny her I-730 petitions. The Decisions conclude with the following two paragraphs:

> The evidence does not indicate the waiting time for the named beneficiaries to receive the necessary documents to travel to India to appear for a scheduled interview. It is unknown when conditions in China will be changed and the restrictions on travel will be lessened. Without this information, the Service is unable to grant a reasonable extension.

> Based upon the reasons set forth in this decision, Form I-730 must be denied. There is no appeal to this decision. The petitioner may file a motion to reopen or a motion to reconsider within 30 days from the date of this decision (33 days of this notice was received by mail). If the petitioner is able to overcome the grounds for this denial, a new petition with the appropriate documentation may be submitted to this office.

The Decisions were signed by David L. Roark, Director, USCIS Texas Service Center.

73.    USCIS thus reopened and denied Plaintiff's I-730 petitions solely because the beneficiaries of those petitions were unable to appear for overseas processing at a U.S. consulate.

74.    USCIS has never disputed the legitimacy of Tsamcho's relationship to her husband and children. USCIS has not set forth any reason for reopening and denying Tsamcho's I-730 petitions other than its assertion that Tsamcho's family members' inability to appear for overseas processing required denial of the I-730 petitions filed on their behalf.

75. USCIS did not reopen and deny Tsamcho's I-730 petitions in the exercise of its discretion. Instead, it determined that Tsamcho's family members' inability to appear at the U.S. consulate in India constituted "adverse information" that required denial of the I-730 petitions. Nowhere in the Decisions did USCIS indicate that it was denying Tsamcho's I-730 petitions as a matter of discretion.

76. USCIS has taken no further action on Tsamcho's I-730 petitions.

77. Tsamcho has not administratively appealed USCIS's denial of her I-730 petitions because there are no administrative avenues by which to seek relief. *See* 8 C.F.R. § 208.21(e).

78. USCIS's reopening and denial of Tsamcho's approved I-730 petitions has caused Tsamcho to suffer great distress and hardship. It has been extremely difficult for Tsamcho to be separated from her family for so long. She cries every day.

79. Tsamcho desperately wants to reunite her family in the United States, where they will be safe from the persecution faced by Tibetans in China.

80. Tsamcho has not seen her husband, youngest daughter, or son since she left Tibet, and she has not seen her eldest daughter since 2002, when she saw her in Nepal.

81. Tsamcho's husband and children continue to want to join her in the United States as soon as possible.

82. Tsamcho's husband, youngest daughter, and son intend to flee Tibet and travel to the U.S. consulate in India as soon as the Chinese government lifts the travel restrictions placed on Tibetans, or as soon as they are able to find another way to travel to India.

83. Tsamcho's eldest daughter continues to live in India. She is now aware that she can appear for consular processing without her father and siblings. If she is given another

18

appointment at the U.S. consulate, Tsamcho's eldest daughter intends to appear at the appointment and travel to the United States.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

84.     Defendants' reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents is contrary to 8 C.F.R. § 208.21(d) and 8 U.S.C. § 1158(b)(3)(A), and, therefore, is an "agency action" that is "not in accordance with law," in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

### SECOND CLAIM FOR RELIEF

85.     Defendants' reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents is an "agency action" that is "arbitrary [or] capricious," and, therefore, violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF

86.     Defendants' implementation of a policy or rule requiring the reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents, without first publishing a proposed regulation and providing a period for public comment, violates the Administrative Procedure Act, 5 U.S.C. § 553(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor as follows:

1.     Assume jurisdiction over the matter;

2.     Certify this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the class of individuals proposed herein;

3.     Issue a declaratory judgment declaring that:

a.     USCIS's reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents is contrary to 8 C.F.R. § 208.21(d) and 8 U.S.C. § 1158(b)(3)(A), and, therefore, is an "agency action" that is "not in accordance with law," in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A);

b.     USCIS's reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents is an "agency action" that is "arbitrary [or] capricious," and, therefore, violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and

c.     USCIS's failure to engage in notice-and-comment rulemaking prior to implementing its policy or rule requiring the reopening and denial of approved I-730 petitions because the beneficiary did not appear for processing at a U.S. consulate or appeared without the requested documents, violates the Administrative Procedure Act, 5 U.S.C. § 553(b).

4.     Hold unlawful and set aside USCIS's denial of Plaintiff's and class members' approved I-730 petitions, order USCIS to notify Plaintiff and class members that USCIS's denial of their approved I-730 petitions has been set aside, and remand Plaintiff's and class members' I-730 petitions to USCIS for further processing;

5.     Issue a permanent injunction ordering USCIS to refrain from reopening and

denying approved I-730 petitions because the beneficiary did not appear for processing at a U.S.

consulate or appeared without the requested documents;

6.     Award reasonable attorneys' fees and costs pursuant to the Equal Access to

Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

7.     Grant any and all further relief this Court deems just and proper.

Dated: New York, New York
       May 5, 2010

                              Respectfully submitted,


                              NEW YORK LEGAL ASSISTANCE GROUP
                              Yisroel Schulman, Esq.
                              Jane Greengold Stevens, of Counsel
                              Jason Parkin, of Counsel
                              450 West 33rd Street, 11th Floor
                              New York, New York 10001
                              Tel. (212) 613-5000
                              Fax (212) 750-0820
                              *Counsel for Plaintiff and the Proposed Class*

# EXHIBIT A



U.S. Citizenship
and Immigration
Services

TO:

**DATE: OCT 3 0 2009**

**Lhakpa Tsamcho**
**96-19 42nd Ave, 1st Floor**
**Corona, NY 11368**

Petition: Form I-730

File Number: SRC0718251018/A88610290
Beneficiary: NORJIN, Tenzin

## DECISION

Reference is made to Refugee/ Asylee Relative Petition (Form I-730) filed by Lhakpa Tsamcho (the petitioner) on behalf of Tenzin Norjin (the beneficiary) in accordance with Title 8, Code of Federal Regulations, part 208.21 [8 C.F.R. §208.21]. After consideration, it is ordered that Form I-730 be denied.

8 CFR 103.5(a)(5)(ii) states "When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30-day period."

The Service must notify the petitioner of any adverse information relating to the petition. See 8 CFR 103.2(b) (16) (i).

8 CFR 103.2(b)(6), states "An applicant or petitioner may withdraw an application or petition at any time until a decision is issued by the Service or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition. However, a withdrawal may not be retracted."

Form I-730 was approved by U.S. Citizenship and Immigration Services (USCIS) on May 21, 2008 and forwarded to the U.S. Department of State's National Visa Center for the beneficiary's overseas processing. Form I-730 was subsequently returned to USCIS upon discovery of adverse information. The beneficiary failed to appear for interviews scheduled on June 4, 2008 and September 10, 2008.

Any application or petition may be denied if a petitioner or applicant fails to appear for a required interview, fails to provide an original document when requested to do so, fails to appear for fingerprinting as directed or fails to provide additional evidence when requested. See 8 CFR 103.2(b).

Based upon the above reasons, the petitioner was notified on July 21, 2009 that it is the intent of USCIS to deny Form I-730. The petitioner was 30 (thirty) days (33 days if this notice is received by mail) to submit evidence in opposition to the notice of intent to deny. Evidence must show

    (1) The required appearance was complied with during the allotted period; or

    (2) The request for appearance was sent to an address other than the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of

address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Service records show a response was received from on August 25, 2009. The petitioner's response package contained a properly completed and signed G-28, Notice of Entry of Appearance as Attorney along with a Request for Reconsideration of Intent to Deny on Humanitarian Grounds from the attorney of record. The response also contained the petitioner's affidavit, U.S. Department of State 2008 Human Rights Report: China and a copy of Legacy INS memorandum from Deputy Commissioner William Yates dated May 15, 2000, titled, *Procedural Guidance on Admission and Adjustment of Status for Refugees.*

According to the response, the petitioner is ""...a Tibetan asylee from the Peoples' Republic of China, and when she filed her Form I-730 petitions she indicated that her family would appear at a consulate in India because they would not be able to travel to a consulate in China to appear for an appointment. Up until March of last year [1988], it was quite common for Tibetans to flee to India and appear at U.S. consulates in India for consular interviews. However, in March of 2008, a peaceful protest by Buddhist monks and nuns in Tibet led to severe repression on the part of the Chinese government, which in turn sparked riots that cause a tightening of restrictions on travel for all Tibetans." As a result of the crackdown, the petitioner's youngest daughter, son and husband who continue to reside in Tibet were unable to acquire passports in order to leave Tibet. According to the counsel's letter, the beneficiaries had filed applications for passports but applications are still pending. The petitioner's affidavit request that the petitions be extended until they are able to leave Tibet.

The evidence does not indicate the waiting time for the named beneficiaries to receive the necessary documents to travel to India to appear for a scheduled interview. It is unknown when conditions in China will be changed and the restrictions on travel will be lessened. Without this information, the Service is unable to grant a reasonable extension.

Based upon the reasons set forth in this decision, Form-730 must be denied. There is no appeal to this decision. The petitioner may file a motion to reopen or a motion to reconsider within 30 days from the date of this decision (33 days if this notice was received by mail). If the petitioner is able to overcome the grounds for this denial, a new petition with the appropriate documentation may be submitted to this office

Sincerely,

David L. Roark, Director
Texas Service Center

Officer # XM109

cc:     Tony Y. Lu
        New York Legal Assistance Group (NYLAG)

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



U.S. Citizenship
and Immigration
Services

TO:

Lhakpa Tsamcho
96-19 42nd Ave, 1st Floor
Corona, NY 11368

DATE: OCT 3 0 2009

Petition: Form I-730

File Number: SRC0718251026/A88610291
Beneficiary: GYALTSEN, Nyima

## DECISION

Reference is made to Refugee/ Asylee Relative Petition (Form I-730) filed by Lhakpa Tsamcho (the petitioner) on behalf of Nyima Gyaltsen (the beneficiary) in accordance with Title 8, Code of Federal Regulations, part 208.21 [8 C.F.R. §208.21]. After consideration, it is ordered that Form I-730 be denied.

8 CFR 103.5(a)(5)(ii) states "When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30-day period."

The Service must notify the petitioner of any adverse information relating to the petition. See 8 CFR 103.2(b) (16) (i).

8 CFR 103.2(b)(6), states "An applicant or petitioner may withdraw an application or petition at any time until a decision is issued by the Service or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition. However, a withdrawal may not be retracted."

Form I-730 was approved by U.S. Citizenship and Immigration Services (USCIS) on May 21, 2008 and forwarded to the U.S. Department of State's National Visa Center for the beneficiary's overseas processing. Form I-730 was subsequently returned to USCIS upon discovery of adverse information. The beneficiary failed to appear for interviews scheduled on June 4, 2008 and September 10, 2008.

Any application or petition may be denied if a petitioner or applicant fails to appear for a required interview, fails to provide an original document when requested to do so, fails to appear for fingerprinting as directed or fails to provide additional evidence when requested. See 8 CFR 103.2(b).

Based upon the above reasons, the petitioner was notified on July 21, 2009 that it is the intent of USCIS to deny Form I-730. The petitioner was 30 (thirty) days (33 days if this notice is received by mail) to submit evidence in opposition to the notice of intent to deny. Evidence must show

(1) The required appearance was complied with during the allotted period; or

(2) The request for appearance was sent to an address other than the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of

address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Service records show a response was received from on August 25, 2009. The petitioner's response package contained a properly completed and signed G-28, Notice of Entry of Appearance as Attorney along with a Request for Reconsideration of Intent to Deny on Humanitarian Grounds from the attorney of record. The response also contained the petitioner's affidavit, U.S. Department of State 2008 Human Rights Report: China and a copy of Legacy INS memorandum from Deputy Commissioner William Yates dated May 15, 2000, titled, *Procedural Guidance on Admission and Adjustment of Status for Refugees.*

According to the response, the petitioner is ""...a Tibetan asylee from the Peoples' Republic of China, and when she filed her Form I-730 petitions she indicated that her family would appear at a consulate in India because they would not be able to travel to a consulate in China to appear for an appointment. Up until March of last year [1988], it was quite common for Tibetans to flee to India and appear at U.S. consulates in India for consular interviews. However, in March of 2008, a peaceful protest by Buddhist monks and nuns in Tibet led to severe repression on the part of the Chinese government, which in turn sparked riots that cause a tightening of restrictions on travel for all Tibetans." As a result of the crackdown, the petitioner's youngest daughter, son and husband who continue to reside in Tibet were unable to acquire passports in order to leave Tibet. According to the counsel's letter, the beneficiaries had filed applications for passports but applications are still pending. The petitioner's affidavit request that the petitions be extended until they are able to leave Tibet.

The evidence does not indicate the waiting time for the named beneficiaries to receive the necessary documents to travel to India to appear for a scheduled interview. It is unknown when conditions in China will be changed and the restrictions on travel will be lessened. Without this information, the Service is unable to grant a reasonable extension.

Based upon the reasons set forth in this decision, Form-730 must be denied. There is no appeal to this decision. The petitioner may file a motion to reopen or a motion to reconsider within 30 days from the date of this decision (33 days if this notice was received by mail). If the petitioner is able to overcome the grounds for this denial, a new petition with the appropriate documentation may be submitted to this office.

Sincerely,

David L. Roark, Director
Texas Service Center

Officer # XM109

cc:     Tony Y. Lu
        New York Legal Assistance Group (NYLAG)

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



U.S. Citizenship
and Immigration
Services

TO:

DATE: OCT 3 0 2009

Lhakpa Tsamcho
96-19 42nd Ave, 1st Floor
Corona, NY 11368

Petition: Form I-730

File Number:  SRC0718251027/A88610292
Beneficiary: TAPSANG, Tenzin

## DECISION

Reference is made to Refugee/ Asylee Relative Petition (Form I-730) filed by Lhakpa Tsamcho (the petitioner) on behalf of Tenzin Tapsang (the beneficiary) in accordance with Title 8, Code of Federal Regulations, part 208.21 [8 C.F.R. §208.21]. After consideration, it is ordered that Form I-730 be denied.

8 CFR 103.5(a)(5)(ii) states "When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30-day period."

The Service must notify the petitioner of any adverse information relating to the petition. See 8 CFR 103.2(b) (16) (i).

8 CFR 103.2(b)(6), states "An applicant or petitioner may withdraw an application or petition at any time until a decision is issued by the Service or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition. However, a withdrawal may not be retracted."

Form I-730 was approved by U.S. Citizenship and Immigration Services (USCIS) on May 21, 2008 and forwarded to the U.S. Department of State's National Visa Center for the beneficiary's overseas processing. Form I-730 was subsequently returned to USCIS upon discovery of adverse information. The beneficiary failed to appear for interviews scheduled on June 4, 2008 and September 10, 2008.

Any application or petition may be denied if a petitioner or applicant fails to appear for a required interview, fails to provide an original document when requested to do so, fails to appear for fingerprinting as directed or fails to provide additional evidence when requested. See 8 CFR 103.2(b).

Based upon the above reasons, the petitioner was notified on July 21, 2009 that it is the intent of USCIS to deny Form I-730. The petitioner was 30 (thirty) days (33 days if this notice is received by mail) to submit evidence in opposition to the notice of intent to deny. Evidence must show

    (1) The required appearance was complied with during the allotted period; or

    (2) The request for appearance was sent to an address other than the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of

address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Service records show a response was received from on August 25, 2009. The petitioner's response package contained a properly completed and signed G-28, Notice of Entry of Appearance as Attorney along with a Request for Reconsideration of Intent to Deny on Humanitarian Grounds from the attorney of record. The response also contained the petitioner's affidavit, U.S. Department of State 2008 Human Rights Report: China and a copy of Legacy INS memorandum from Deputy Commissioner William Yates dated May 15, 2000, titled, *Procedural Guidance on Admission and Adjustment of Status for Refugees.*

According to the response, the petitioner is ""...a Tibetan asylee from the Peoples' Republic of China, and when she filed her Form I-730 petitions she indicated that her family would appear at a consulate in India because they would not be able to travel to a consulate in China to appear for an appointment. Up until March of last year [1988], it was quite common for Tibetans to flee to India and appear at U.S. consulates in India for consular interviews. However, in March of 2008, a peaceful protest by Buddhist monks and nuns in Tibet led to severe repression on the part of the Chinese government, which in turn sparked riots that cause a tightening of restrictions on travel for all Tibetans." As a result of the crackdown, the petitioner's youngest daughter, son and husband who continue to reside in Tibet were unable to acquire passports in order to leave Tibet. According to the counsel's letter, the beneficiaries had filed applications for passports but applications are still pending. The petitioner's affidavit request that the petitions be extended until they are able to leave Tibet.

The evidence does not indicate the waiting time for the named beneficiaries to receive the necessary documents to travel to India to appear for a scheduled interview. It is unknown when conditions in China will be changed and the restrictions on travel will be lessened. Without this information, the Service is unable to grant a reasonable extension.

Based upon the reasons set forth in this decision, Form-730 must be denied. There is no appeal to this decision. The petitioner may file a motion to reopen or a motion to reconsider within 30 days from the date of this decision (33 days if this notice was received by mail). If the petitioner is able to overcome the grounds for this denial, a new petition with the appropriate documentation may be submitted to this office

Sincerely,

David L. Roark, Director
Texas Service Center

Officer # XM109

cc:     Tony Y. Lu
        New York Legal Assistance Group (NYLAG)

U.S. Department of Homeland Security
P.O. Box 852841
Mesquite, Texas 75185-2841



U.S. Citizenship
and Immigration
Services

TO:

**DATE:** OCT 3 0 2009

Lhakpa Tsamcho
96-19 42nd Ave, 1st Floor
Corona, NY 11368

Petition: Form I-730

File Number: SRC0718251032/A88610293
Beneficiary: DICKEY, Tenzin

### DECISION

Reference is made to Refugee/ Asylee Relative Petition (Form I-730) filed by Lhakpa Tsamcho (the petitioner) on behalf of Tenzin Dickey (the beneficiary) in accordance with Title 8, Code of Federal Regulations, part 208.21 [8 C.F.R. §208.21]. After consideration, it is ordered that Form I-730 be denied.

8 CFR 103.5(a)(5)(ii) states "When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30-day period."

The Service must notify the petitioner of any adverse information relating to the petition. See 8 CFR 103.2(b) (16) (i).

8 CFR 103.2(b)(6), states "An applicant or petitioner may withdraw an application or petition at any time until a decision is issued by the Service or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition. However, a withdrawal may not be retracted."

Form I-730 was approved by U.S. Citizenship and Immigration Services (USCIS) on May 21, 2008 and forwarded to the U.S. Department of State's National Visa Center for the beneficiary's overseas processing. Form I-730 was subsequently returned to USCIS upon discovery of adverse information. The beneficiary failed to appear for interviews scheduled on June 4, 2008 and September 10, 2008.

Any application or petition may be denied if a petitioner or applicant fails to appear for a required interview, fails to provide an original document when requested to do so, fails to appear for fingerprinting as directed or fails to provide additional evidence when requested. See 8 CFR 103.2(b).

Based upon the above reasons, the petitioner was notified on July 21, 2009 that it is the intent of USCIS to deny Form I-730. The petitioner was 30 (thirty) days (33 days if this notice is received by mail) to submit evidence in opposition to the notice of intent to deny. Evidence must show

(1) The required appearance was complied with during the allotted period; or

(2) The request for appearance was sent to an address other than the application, petition, or notice of representation, or that the applicant or petitioner advised the Service; in writing, of a change of

address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Service records show a response was received from on August 25, 2009. The petitioner's response package contained a properly completed and signed G-28, Notice of Entry of Appearance as Attorney along with a Request for Reconsideration of Intent to Deny on Humanitarian Grounds from the attorney of record. The response also contained the petitioner's affidavit, U.S. Department of State 2008 Human Rights Report: China and a copy of Legacy INS memorandum from Deputy Commissioner William Yates dated May 15, 2000, titled, *Procedural Guidance on Admission and Adjustment of Status for Refugees.*

According to the response, the petitioner is ""...a Tibetan asylee from the Peoples' Republic of China, and when she filed her Form I-730 petitions she indicated that her family would appear at a consulate in India because they would not be able to travel to a consulate in China to appear for an appointment. Up until March of last year [1988], it was quite common for Tibetans to flee to India and appear at U.S. consulates in India for consular interviews. However, in March of 2008, a peaceful protest by Buddhist monks and nuns in Tibet led to severe repression on the part of the Chinese government, which in turn sparked riots that cause a tightening of restrictions on travel for all Tibetans." As a result of the crackdown, the petitioner's youngest daughter, son and husband who continue to reside in Tibet were unable to acquire passports in order to leave Tibet. According to the counsel's letter, the beneficiaries had filed applications for passports but applications are still pending.

According the counsel's letter, "The Petitioner's eldest daughter, Tenzin Dickey, is currently in India. She did not previously appear for her interviews because she was awaiting the arrival of her father and siblings, so they could go together." The petitioner's affidavit request that the petitions be extended until they are able to leave Tibet

The evidence does not indicate the waiting time for the named beneficiaries to receive the necessary documents to travel to India to appear for a scheduled interview. It is unknown when conditions in China will be changed and the restrictions on travel will be lessened. Without this information, the Service is unable to grant a reasonable extension.

Based upon the reasons set forth in this decision, Form-730 must be denied. There is no appeal to this decision. The petitioner may file a motion to reopen or a motion to reconsider within 30 days from the date of this decision (33 days if this notice was received by mail). If the petitioner is able to overcome the grounds for this denial, a new petition with the appropriate documentation may be submitted to this office.

Sincerely,

David L. Roark, Director
Texas Service Center

Officer # XM109

cc:    Tony Y. Lu
       New York Legal Assistance Group (NYLAG)